EMALINE C. PARSON, APPELLANT, V. JOSEPH F. MURPHY ET AL., APPELLEES.

FILED JULY 10, 1917. No. 20055.

1. **Master and Servant: EMPLOYERS' LIABILITY ACT: DEPENDENT.** In the meaning of the employers' liability act (Rev. St. 1913, secs. 3642-3696), dependency is not based solely upon a present legal obligation to support.

2. ———: ———: ———. Evidence examined, discussed in the opinion, and *held* that plaintiff is a dependent within the meaning of the act.

3. ———: ———: ———. Under the employers' liability act, the question of dependency is not determined by the fact that a decedent had or had not actually contributed to the support of a parent before the date of the accident.

APPEAL from the district court for Douglas county: WILLIAM A. REDICK, JUDGE. *Reversed.*

*Henry J. Beal,* for appellant.

*Mahoney & Kennedy* and *Guy C. Kiddoo, contra.*

DEAN, J.

On January 29, 1917, Emaline C. Parson, plaintiff and appellant, began this action in the district court for Douglas county against defendants, in pursuance of the provisions of the workmen's compensation act, alleging generally that on March 23, 1916, her son Nels Parson, now deceased, while in the employ of Edward Carr, one of the

defendants, was kicked by a vicious mule that he was driving, and that was owned by Mr. Carr, and that as a result of the injuries so received her son died two days thereafter. Plaintiff alleged that her son was her only support, and that she is the only surviving relative who sustained to Nels Parson the relation of dependent. She prays for judgment for the amount of one-half of her son's wages for 350 weeks, together with $100 expenses and $90 hospital and physician's expenses, and for costs.

For answer defendants admit the employment of plaintiff's son, but allege it was only casual, and that the dependents of Nels Parson, if any, are therefore not entitled to the benefits of the workmen's compensation law, deny that Nels Parson's death was caused by or contributed to by any personal injury by accident arising in the course of his employment by the defendants, and that his death was due to other causes separate from any injury sustained while in defendants' employ, and that the injuries were due to wilful negligence and to intoxication, and that plaintiff's son never contributed to her support so as to entitle her to claim benefits as a dependent under the workmen's compensation act.

The trial court found generally in favor of defendants, and rendered a judgment against plaintiff for costs. Mrs. Parson has brought the case here for review.

The employers' liability act, in section 3665, Rev. St. 1913, among other things, provides: "Dependents. The following persons shall be conclusively presumed to be wholly dependent for support upon a deceased employee. (a) A wife upon a husband with whom she is living at the time of his death; (b) husband upon a wife with whom he is living at the time of her death; (c) child or children under the age of sixteen years (or over said age, if physically or mentally incapacitated from earning) upon the parent with whom he is or they are living at the time of death of such parent, there being no surviving parent. * * * (e) In all other cases, questions of dependency, in whole or in part, shall be determined in accord-

ance with the fact, as the fact may be at the time of the injury. * * * (f) No person shall be considered a dependent, unless he or she be a member of the family of the deceased employee, or bears to him the relation of widow or widower, or lineal descendant, or ancestor, or brother, or sister. (g) Questions as to who constitute dependents and the extent of their dependency shall be determined as of the date of the accident to the employee, and the death benefit shall be directly recoverable by and payable to the dependent or dependents entitled thereto, or their legal guardians or trustees."

Defendants insist that the injury sustained by Nels Parson was due to his wilful negligence and to intoxication. The act expressly provides that the burden of proof to establish wilful negligence on the part of an injured employee is on the defendant. In the present case defendants introduced no testimony, and there is no proof of such negligence before us. Some testimony was brought out on cross-examination showing that plaintiff's son was intoxicated to some extent when he was injured, but it is nowhere shown that his intoxication in any way contributed to his injury, and without proof we will not assume that it did.

Mrs. Parson is a widow about 77 years of age, and unable to work on account of illness and extreme old age. For her sole support she has $300 or $400 deposited in a bank, which draws 4 per cent. interest. When this sum is expended she will be reduced to penury and will become a public charge. Her son was a single man when injured, about 40 years of age, without any other person dependent upon him. She testified that in November, 1915, about five months before the injury, she received a letter from him in which he promised to come and live with her and to support her, but that soon thereafter he became ill and could not do so.

Defendants argue in their brief: "The question of the right of the plaintiff to compensation must be determined by whether or not the deceased was actually contributing to her support. If he was not, she incurred no pecuniary

Parson v. Murphy.

loss by reason of his death, and consequently is entitled to no compensation. * * * The plaintiff has not lost one iota of the support upon which she was dependent prior to Nels Parson's death." Elsewhere in their brief defendants concede that, "if in the case at bar Mrs. Parson had been living with her deceased son, and had been supported by him, there would be no question as to her right to compensation."

Defendants' argument on this point cannot be sustained. We believe the statute is susceptible of an interpretation that more nearly accords with the main purpose of its enactment. The act is one of general interest, not only to the workman and his employer, but as well to the state, and it should be so construed that technical refinements of interpretation will not be permitted to defeat it. Among its objects are these: That the cost of the injury may be charged to the industry in which it occurs; the prevention of tedious and costly litigation; a speedy settlement between employer and employee; and to prevent dependent persons from becoming a public burden. To adopt defendants argument would require us to announce a rule that is not warranted by the act, nor by common experience. It is not shown that the widow's son made any contributions to her support. But in any event this feature is not important, in view of our holding that the question of contribution, as it is contended for by defendants, is not controlling. To illustrate: For its daily bread a family is ordinarily dependent upon the daily labor of the head of the household. The bread winner, a day laborer with little means is stricken. There remain surviving a widow, who by reason of age is unable to support herself, and a wage-earning son who is without dependents, and who has not recently lived with his parents, nor has he ever contributed to the support of either. In such case would it be seriously contended that the mother was not a dependent of her son in the ordinary and everyday meaning of the word, even though when her husband died she may have been provided with a small store of food and raiment to supply her every present need, sufficient for a few weeks or months at most?

Will it be argued that a supply of food that would sustain life for a day or a week would take plaintiff out of the dependent class? We cannot hold that the legislature contemplated a construction at once so literal, so restricted, and so unreasonable.

That plaintiff's son was capable of earning the wages usual to his employment affirmatively appears, and is not challenged in the record. But for the accident he would now, in human probability, be a wage-earner, and thus be in position to support plaintiff in pursuance of his promise. It is always presumed, until overcome by proof, that a man will do his duty. It cannot be known, and it will not be presumed, that Nels Parson, if living, would be unmindful of his filial duty, with or without promise, to support his aged and dependent parent. The question of legal liability to support does not of itself determine the question at issue, nor in the present case will the fact that Nels Parson was only occasionally employed by defendants defeat plaintiff's action, as argued by them.

The statute nowhere undertakes to define dependency. Its language is that "dependency shall be determined as of the date of the accident to the employee." If, then, plaintiff was not a dependent of her son Nels, upon whom was she dependent? Surely, in view of the facts, she could look to him for support. So far as the record and plaintiff's argument shows, her son fulfilled every statutory requirement, unless such requirment makes it imperative that at "the date of the accident" he should have been living with and at the time actually supporting his mother. This we think is too technical, and we cannot adopt defendants' reasoning on this point. Dependency under the statute may perhaps be held to mean for such food, clothing and shelter as may be necessary for the living of a person in his class and station, as distinguished from provision for the bare wants of existence. It is substantially the same principle that is involved in determining in a proper case what would be necessaries for a minor. In view of the record and of the law, we decline to hold that because a por-

tion of plaintiff's meager store remains unused, and because she neither lived with nor was supported by her son, she was not therefore his dependent at the time of the injury.

Defendants cite *Pinel v. Rapid Railway System,* 184 Mich. 169, but it does not seem to be applicable to the case at bar, for the reason, among others, that the claimant had a life lease on a farm of 87 acres in Macomb county and another son resided with her.

*Crockett v. International R. Co.,* 162 N. Y. Supp. 357, is a case where the employee married within six days after sustaining the injury from which he subsequently died. Suit was commenced by his widow, and it was held that she was his dependent at the date of the accident, notwithstanding the statute provided that "all questions of dependency shall be determined as of the time of the accident." In that case the rule was relaxed, and the decision based on the ground that plaintiff was the "surviving wife," and as such was entitled to compensation under the statute because at the time of her husband's death she came within a class that the statute conclusively fixed as dependent.

*Sweet v. Sherwood Ice Co.,* 100 Atl. (R. I.) 316, reviews some of the cases on the question of dependency, and says: "They do not baldly hold that the legal obligation determines the question of dependency, but that such legal obligation must be coupled with a reasonable probability that such obligation will be fulfilled." See *Purdy v. Watts,* 99 Atl. (Conn.) 496; 1 Bradbury, Workmen's Compensation (2d ed.) 575 *et seq*; 6 B. W. C. C. 348; 1 B. W. C. C. 85.

The word "dependent" should not be given its narrowest nor its most literal meaning, when considered in connection with the act in question, its aims and objects. 6 Bradbury, Workmen's Compensation, 571, gives this definition: "The expression 'dependent' means dependent for the ordinary necessaries of life for a person of that class and position in life, taking into account the financial and social position of the recipient."

In *Powers v. Hotel Bond Co.*, 89 Conn. 143, in which is involved a like act, it is aptly said: "The act, by eliminating the proof of negligence, by minimizing the delay in the award and by making it reasonably certain, seeks to avoid the great waste of the tort action, and to promote better feeling between workmen and employer, and accepts, as an inevitable condition of industry, the happening of accident, and charges its cost to the industry."

*Kennerson v. Thames Towboat Co.*, 89 Conn. 367, L. R. A. 1916A, 436: "George Marsdale left surviving him two brothers, a sister, and a mother, claimant herein. He had, during the illness of his father, sent his mother from July until his father's death, November 10, 1913, $10 a week of his weekly wages of $15. After her husband's death the mother went to live with her son Charles temporarily, and on December 9, 1913, the decedent engaged in said employment with the respondent for $30 a month and his board, worth 50 cents a day. Out of his earnings the decedent gave his mother from $20 to $25 a month, which sums were to pay the funeral expenses of her husband. These were just paid prior to George's death. The mother and decedent had arranged that, as soon as the funeral expenses were paid, her residence with her son Charles should cease, and they should then live together and the decedent should support his mother. Except as stated, none of the children contributed to the support of their mother." In that case it was held: "That Mrs. Marsdale, the mother of George Marsdale, was a total dependent of her son George." It will be noted that George Marsdale did not contribute anything toward the support of his mother after his father's death, but that the money that he sent to her after that event was all devoted to the payment of the funeral expenses attendant upon the death of his parent, an item that was perhaps not chargeable to his mother in any event, though the record is silent on this point.

1 B. W. C. C. 332, cites *Medler v. Medler*, which holds: "A wife who had been turned out of her home by her husband and had not been living with or supported by him for

11 years before his death, but who had made endeavors to obtain support, was held to be in part dependent upon her husband's earnings at the time of his death within the meaning of schedule I (1) (a) (ii) of the Act of 1906."

Speaking generally, it may be borne in mind that a dependent who avails himself of the act is deprived of having a jury pass upon any of the questions that pertain to the injury or the cause of death of the person upon whom he may be dependent for support, and for this reason, among others, the statute, which is remedial in its nature, should be liberally construed. If our statute means that, unless the son is actually contributing to the support of his mother at the time of the accident, she is not a dependent within its meaning, and if this doctrine is established as a general rule, it would lead to strange conclusions. If such construction is proper, it is a very unfortunate statute, because, prior to its enactment, the mother could plainly recover damages for the death of a son who sustained to her the same relation as a dependent that Nels Parson sustained to plaintiff. That we have decided many times, and to now hold otherwise is to hold that the statute has done away with the plainest dictate of humanity. Under the law the mother could compel her son to contribute to her support, and yet because he does not do so, and because she can live a month or so without his doing so, we construe the statute to mean that he need not support her, and that it was no advantage to her to have him in a position to do so. Under such circumstances, the facts existed at the time of the accident which would make her dependent upon her son, although he failed to perform his duty and failed to contribute anything toward her support. One may be at the present time dependent upon his growing crop of wheat for his daily bread, and yet a drouth may destroy the crop and deprive him entirely of that support. Can it be said that at the time that the wheat was in the process of maturing he was not dependent upon that crop? And so one may give any number of illustrations, all showing that the fact exists at the present time that we

depend upon something for our support, although that particular thing may not be actually supporting us at the present time.

*Boyd v. Pratt,* 72 Wash. 306, construes a statute containing this language: "If the workman is under the age of twenty-one years and unmarried at the time of his death, the parents or parent of the workman shall receive $20 a month for each month after his death until the time at which he would have arrived at the age of twenty-one years." Laws Wash. 1911, ch. 74, sec. 5, subd. 3. It was there held that a parent, who is also a dependent, is entitled to the monthly payment during the continuance of dependency, and not merely to the time of majority.

*Pittsburgh, C., C. & St. L. R. Co. v. Collard's Adm'r,* 170 Ky. 239, is a recent case which construes the federal employers' liability act of April 22, 1908 (35 U. S. St. at Large, ch. 149, p. 65). It is there held: "It is not necessary to prove that a decedent has made actual contributions to the support of his parents in order to establish a reasonable expectancy of pecuniary benefit from the continuance of his life." The same case holds that declarations made by decedent that he intended to support his father were sufficient to sustain a verdict in behalf of the father. To the same effect is the following: *Tobin v. Bruce,* 162 N. W. (S. Dak.) 933. See, also, *Garrett v. Louisville & N. R. Co.,* 197 Fed. 715; *Michigan C. R. Co. v. Vreeland,* 227 U. S. 59.

The employers' liability act is new to our state. The questions involved in its construction are not without difficulty. Adjudicated cases are not numerous, and there is some conflict among them, due in part to slight differences in the wording of the statutes of the different states. On the points in dispute we have adopted the rule that appears to us to harmonize with the true intent of the legislature.

The judgment of the district court is therefore reversed and the cause remanded for further proceedings.

REVERSED.