## SWIFT & CO. et al. v. STATE INDUSTRIAL COMMISSION et al.

No. 23119. Opinion Filed March 15, 1932.

Rehearing Denied Dec. 27, 1932.

C. A. Ambrister, for petitioners.

Stone, Moon & Stewart and J. H. Kennedy, for respondents.

McNEILL, J. This is an original proceeding instituted in this court by the petitioners, Swift & Company and the Security National Casualty Company, to review an award made by the State Industrial Commission on the 9th day of November, 1931, whereby the respondent, Logan Miller, was awarded compensation for permanent total disability due to an accidental personal injury sustained by him while in the employ of petitioner Swift & Company in the latter part of October, 1927. After briefs were filed, the Commission made its award.

The material findings of fact and the award based thereon are as follows:

"1. That in the latter part of October, 1927, claimant was in the employment of the respondent and engaged in a hazardous occupation, subject to and covered by the provisions of the Workmen's Compensation Law, and that the claimant sustained an accidental personal injury arising out of and in the course of his employment at the time, consisting of an injury to the head.

"2. That claimant returned to work the next day and reported the injury to his employer and continued to work for the respondent; that at the time of the accident and for a period of about six months thereafter it was apparently trivial; that

during this period the claimant did not know nor could he have known that any real injury had resulted or would result from the accident; that claimant's wife called the manager of the respondent company at Muskogee, Okla., about six weeks after the accidental injury telling him that she noticed a change in the condition of the claimant's mind; that six months after date of the accident claimant became mentally incompetent, and now is and has so been since said dates; and that he had to quit work about the latter part of August, 1928; and it was further shown by the records that claimant had spells and fits during these latter months that he worked.

"3. That on or about November, 1929, claimant was duly adjudged mentally incompetent by the county court of Muskogee county, and Minnie Miller, wife of the claimant, was duly appointed his legal guardian and is now the duly qualified guardian, but before that time no guardian, committee or next friend was ever appointed for claimant; that this claim for compensation was filed on the 6th day of October, 1930, on behalf of the claimant by his duly appointed guardian.

"4. That the average daily wage of the claimant at the time of said accidental injury was $4 per day.

"5. That by reason of said accidental injury, the mental incompetency resulting therefrom, claimant was totally and permanently disabled from the performance of ordinary manual labor, and is now and has so been since he was forced to quit work in the latter part of August, 1928, and up to this time has received no compensation for said disability.

"Upon consideration of the foregoing facts, the Commission is of the opinion that the claimant is wholly and permanently disabled for the performance of ordinary manual labor, and that the failure of the claimant to give written notice to the Commission and the employer within 30 days from the date of injury was not prejudicial to the substantial rights of the respondent or insurance carrier, for under the facts in this case the respondent had actual notice of said injury, and this claim was filed on the 6th day of October, 1930, on behalf of the claimant by his duly appointed guardian, before the expiration of one year after the appointment of said guardian, and was filed within the period allowed by law in such case, as is more particularly set out in section 7334, C. O. S. 1921, as amended by Senate Bill No. 155, Session Laws of 1923, to read as follows:

" 'Limitation of Time—Exception.

" 'No limitation of time provided in this act shall run as against any person who is mentally incompetent or a minor dependent so long as he has no committee, guardian or next friend.'

"The Commission is further of the opinion that claimant is entitled to compensation at the rate of $15.39 per week, for a period not to exceed 500 weeks from the 1st day of September, 1928, the date he was forced to quit work; and that there is now due the claimant the sum of $2,523.96, or 164 weeks' compensation at the rate of $15.39 per week, as compensation computed from September 1, 1928, to October 24, 1931, and the balance to be paid bi-monthly at the rate of $15.39 per week until 500 weeks' total permanent disability have been paid for as a result of said accidental injury.

"It is therefore ordered, that * * * the respondent or insurance carrier pay to the claimant the sum of $2,523.96 as compensation at the rate of $15.39 per week, from September 1, 1928, to October 24, 1931, * * * and to continue compensation * * * at the rate of $15.39 per week until a total period of 500 weeks has been paid for, or until otherwise ordered by the Commission, and to pay all hospital, doctor and medical bills incurred by reason of said accidental injury."

The petitioner contends that the award should be vacated for the following reasons:

(1) "The claim is barred by the statute of limitations."

(2) "The findings of the Commission are not sustained by, and are contrary to, the evidence."

(3) "The award is based on conjecture, surmise, and speculation."

(4) "That the opinion was not written by a member of the Industrial Commission and is therefore void."

We consider these contentions of the petitioner in reverse order. Section 7316, C. O. S. 1921, provides:

"The Commission may authorize any inspector to conduct any such investigation, inquiry or hearing, in which case he shall have the power of a commissioner in respect thereof."

The record in this case shows that the evidence was taken by an inspector and that he initialed the order, but the order was made by the Commission upon a roll call of the Commission. The presumption, which is in no way overcome, is that the record and the evidence was before the Commission and was considered by it.

As to the second and third reasons, the evidence is not disputed that the respondent was working for Swift & Company in Muskogee and was struck on the head near the right temple by the lever of a meat trailer.

134

The medical testimony offered both on behalf of the petitioner and respondent showed conclusively that the respondent at the time of the hearing was suffering from an injury to his head, affecting his mind, and was disabled from the performance of ordinary manual labor. The medical testimony is conflicting as to whether the disability was the result of the accident, but it amply supports the findings of the Commission that it was due to the accident.

Was the claim "barred by the statute of limitations?" The record shows that the respondent was employed in the Swift & Company plant at Muskogee from some time in 1924, and that in the course of such employment he was struck on the head by a lever of a meat trailer in October, 1927; that prior to the accident he had never suffered an injury and his mental and physical condition had been normal. Following the accident he continued to work for the petitioner; about six weeks after the accident a change in his condition was noticed and about six months after the accident he became mentally incompetent, but continued to work for petitioner. A claim for compensation was filed with the State Industrial Commission on October 11, 1930. The exact time when he quit work is in dispute. The Commission found that the respondent quit work in August, 1928, but there is some evidence that he quit work in October, 1928. On November 20, 1929, the county court of Muskogee county adjudged the respondent an incompetent and appointed his wife as his guardian. On the same date he was committed to the Hospital for the Insane at Vinita. On October 11, 1930, his guardian on his behalf filed a claim for compensation with the State Industrial Commission. It is the contention of the petitioner that, since the accident occurred in October, or November, 1927, and the claim was not filed with the State Industrial Commission until October 11, 1930, the claim of respondent is barred by section 7301, C. O. S. 1921.

It is the contention of the respondent that the accident and the resultant injury were not simultaneous; that the real injury was the disease, that is to say, the mental incapacity, and disease of the brain, which developed as a result of the accident, and which culminated about six months after the date of the accident; that the resulting disease was not foreseen during the six months following the accident and that the injury did not arise until the disease developed. Section 7284, C. O. S. 1921, under the head of definitions, at paragraph 7, provides:

"'Injury or personal injury' means only accidental injuries arising out of and in the course of employment and such disease or infection as may naturally and unavoidably result therefrom."

There is some evidence in the record that the disability of the respondent was progressive after the date of the accident, but there is evidence which supports the finding of the Commission that:

"At the time of the accident and for a period of about six months thereafter it was apparently trivial; that during this period the claimant did not know nor could he have known that any real injury had resulted or would result from the accident * * *; that six months after the date of the accident claimant became mentally incompetent, and now is and has so been since said dates."

The petitioner had knowledge of the accident at the time it occurred. This court has held that the statute of limitations provided in said section 7301, C. O. S. 1921, is a limitation on the remedy and not upon the right itself. Atlas Coal Co. v. Corrigan, 148 Okla. 36, 296 Pac. 963; Pine v. State Industrial Commission, 148 Okla. 200, 298 Pac. 276.

In the case of Travelers' Ins. Co. v. Ohler, 119 Neb. 121, 227 N. W. 449, the Supreme Court of Nebraska said:

"The court has recognized that the Workmen's Compensation Law was framed for the purpose of requiring industries to bear a part of the loss occasioned to workmen, engaged therein, becoming disabled while employed in the industry, when such disability arises out of and in the course of employment. It has been the declared policy of this court not to deny its benefit by resorting to strained or technical construction, but to give to its provisions a liberal construction so as to effectuate its general purpose. Parson v. Murphy, 101 Neb. 542, 163 N. W. 847, L. R. A. 1918F, 479; Selders v. Cornhusker Oil Co., 111 Neb. 300, 196 N. W. 316. Applying these principles in the case last cited, this court held: 'A latent accidental injury to a workman, seeming at first to be trifling but subsequently resulting in disability, may be found to occur when discovered by means of X-rays, within the meaning of the Workmen's Compensation Law, providing that no proceeding for compensation shall be maintained unless the claim therefor is made within six months from the occurrence of the injury.' In that case the injury was latent, the claim was not filed within six months, and it was held that the injured employee was not thereby denied compensation.

"Again, in McGuire v. Phelan-Shirley Co., 111 Neb. 609, 197 N. W. 615. the same rule was applied, and it was therein determined that an injured workman, who had not given notice of his claim within six months and had not filed his claim within the one year prescribed by the statute, was not thereby deprived of the right to receive compensation. In City of Hastings v. Saunders, 114 Neb. 475, 208 N. W. 122, it was held: 'Where an employee is accidentally injured, and such injury is latent and of a progressive nature, and subsequently culminates in a compensatory disability, a claim for such injury under our Employers' Liability Act may be filed with the compensation commissioner at any time within one year after the culmination thereof'."

In the case of In re Brown, 116 N. E. 897, the Supreme Court of Massachusetts said:

"In the case at bar there was evidence that a rupture of the kind which the employee had does not manifest itself immediately upon the strain which causes the rupture, and that in the ordinary case it would not develop for two or three weeks after the strain. It follows that the injury took place on October 18th, when the rupture manifested itself by the swelling in the employee's groin, and not on October 1st, when he strained himself."

In Hornbrook-Price Co. v. Stewart, 118 N. E. 315, 66 Ind. App. 400, there is a like holding upon a similar state of facts. It was there said:

"It should be observed that the injury is the thing of which notice is to be given, and that the time is to be reckoned from the occurrence of the injury. The accident causing Stewart's rupture occurred the latter part of June, 1916, but was of such a character that it did not immediately disable him. With the aid of a truss he continued to work for the same employer for a period of six months thereafter. During all this period his superiors knew of his condition and recognized it by giving hm lighter work. In January, 1917, because of the aggravated condition of his rupture, he became totally disabled, and was obliged to quit the work. Under these circumstances it must be held that the real injury did not develop until January, 1917."

See L. R. A. 1918E, commencing at page 559. Under the notation, after reference is made to the aforesaid cases from Nebraska, Massachusetts, and Indiana, the notator says:

"So, too, in Re McCaskey (1917) (Ind. App.), 117 N. E. 268, in which it was sought to hold the employer liable for medical services rendered more than 30 days after the accident, where the statute provides that the employer shall furnish a physician only during 'the 30 days after an injury', the court held that the 'injury' did not occur at the time when the employee received a blow upon the head, but over a month thereafter, when the employee was taken with a severe pain in his forehead, and it was discovered that an abscess had formed, as a direct result of the blow.

"Although the English act requires notice to be given 'as soon as practicable' after the accident, and does not fix a definite period within which the notice must be given, the language used by Lord Cozens-Hardy, M. R., in Mills v. Dinnington Main Coal Co. (1916) 10 B. W. C. C. (Eng.) 153, tends to support the position taken by the courts of Nebraska, Massachusetts, and Indiana. He says: 'It is open to the employers to say that notice was not given of the accident as soon as it reasonably could be. That is quite true, but we must remember this: It was an accident which, apparently, was trivial at the time; it was honestly so regarded by the widow, and the man himself went on working for some considerable time till he got rather seriously and obviously ill. We have held, in more than one case, that you cannot require a person to give notice of an accident when it is apparently trivial, and does not deprive the man of the ability to work immediately after, and when honestly he did not think that it was anything else but a trivial knock on the leg'."

To the same effect are the following cases: In re McCaskey (Ind. App.) 117 N. E. 268; Smith v. Industrial Comm. (Cal.) 162 Pac. 636; Leadbetter v. Industrial Comm. (Cal.) 177 Pac. 449; Stolp v. Department of Labor (Wash.) 245 Pac. 20; Hustus' Case (Me.) 123 Atl. 514; Guderian v. Sterling Sugar & R. Co. (La.) 91 So. 546.

The statute of limitations in this case began to run when the respondent's right to claim compensation arose, and that was when the disability developed and became apparent.

Section 7334, C. O. S. 1921, provides as follows:

"No limitation of time provided in this act shall run as against any person who is mentally incompetent or a minor dependent. so long as he has no committee, guardian or next friend."

Under this provision of the law the statute of limitations would not run from the time the respondent became mentally incompetent, about six months after the accident, to the time his guardian was appointed, on November 20, 1929. The claim was filed with the Commission on October 11, 1930, and it was not barred by the said section 7301, C. O. S. 1921.

The award of the State Industrial Commission is therefore affirmed.

LESTER, C. J., CLARK, V. C. J., and SWINDALL and ANDREWS, JJ., concur. KORNEGAY, J., concurs in result. RILEY, HEFNER, and CULLISON, JJ., absent.

Note.—See under (1) annotation in L. R. A. 1918E, 561; 16 A. L. R. 462; 40 A. L. R. 495; 28 R. C. L. 807, 808, 825; R. C. L. Perm. Supp. pp. 6235, 6249; R. C. L. Pocket Part, title Workmen's Compensation, § 113.